UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| ROBIN JELKS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NO. 2:03-CV-470 PS |
| | ) | |
| DONALD J. COLESON, GENERAL | ) | |
| LOGISTICS, INC., and RYDER | ) | |
| TRUCK RENTAL, | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

General Logistics leased a truck from Ryder Truck Rental and had Donald Coleson use it to drive a load on General Logistics' behalf. Coleson got in an accident with Plaintiff Robin Jelks, and Jelks sued Ryder Truck (among others) claiming that Coleson was Ryder's agent. This matter is before the Court on Defendant Ryder Truck Rental's Motion for Summary Judgment, [Doc. 24], which was not responded to by Jelks. Because the undisputed evidence demonstrates that there was no employment relationship between Ryder and Coleson nor was there an agency relationship between Ryder and Coleson, Ryder's Motion for Summary Judgment is granted.

**I.  BACKGROUND**

This matter arises out of a two-vehicle accident that occurred on March 27, 2002 on eastbound Interstate 80/94 ("I-80").  Defendant Donald Coleson was driving a semi-truck and

1

trailer owned by Ryder Truck Rental and leased to General Logistics Inc.[1]  Plaintiff Robin Jelks was driving a Dodge Stratus in the far right lane of I-80.  At approximately 2:00 a.m., Jelks' Dodge collided with the rear of Coleson's trailer allegedly causing Jelks substantial injuries.

At the time of the accident, Coleson was not employed by Ryder nor did Ryder exert any control over Coleson's actions.  Indeed, Ryder did not pay Coleson any wages nor did Ryder have the authority to fire Coleson.  Ryder never gave Coleson any order or instructions as to how to perform his job for his employer, Drivers Service Incorporated.  For example, Ryder did not instruct Coleson where he would pick up his loads nor did Ryder instruct Coleson on which routes to take to deliver his loads.

Further, Ryder did not give Coleson authority to act on behalf of Ryder nor did he believe that he had such authority.  Coleson testified via affidavit that he did not act on Ryder's behalf, did not believe that he had the authority to act on Ryder's behalf, and did not represent to others that he had the authority to act on Ryder's behalf.  (Coleson Aff. at ¶¶ 5-8).  A representative from Ryder likewise testified that Ryder did not grant Coleson authority to act on its behalf or represent to others that Coleson was authorized to act on Ryder's behalf.  (Nies Aff. at ¶¶ 9-10).

On November 5, 2003, Jelks filed her complaint in the Northern District of Indiana. [Doc. 1].  Jelks alleged that Ryder acted negligently "by and through its agent and servant the Defendant, Donald J. Coleson." (Cmp. at § 5).   The complaint did not contain any other theory

---

[1] Coleson was employed by Drivers Service Inc. which has not been sued in this matter. The parties have not explained why Coleson, an employee of Drivers Service, Inc., was driving a General Logistics leased vehicle.  We suspect that Drivers Service supplies drivers to companies in need of truck drivers, but in any event, the lack of clarity on this factual matter is immaterial to the pending motion.

of liability as to Ryder.  In an effort to flesh out the claim against it, Ryder submitted an interrogatory to Jelks asking if she claimed that Ryder had any liability for her injuries and requesting that she state all legal bases and factual support for any such theory of liability.  Jelks responded by stating "Yes, please refer to Complaint."  (Ex. C. at Interog. 30).  Thus, the only allegation pending against Ryder is that Coleson was acting as Ryder's agent or servant at the time of the accident.

## II.  DISCUSSION

### A.  Standard of Review

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  The party seeking summary judgment carries the initial burden of demonstrating an absence of evidence to support the position of the non-moving party. *Doe v. R.R. Donnelley & Sons, Co.*, 42 F.3d 439, 443 (7th Cir. 1994).  The non-moving party must then set forth specific facts showing that there is a genuine issue of material fact and that the moving party is not entitled to a judgment as a matter of law. *Anderson v. Liberty Lobby*, 447 U.S. 242, 252 (1986).

In making this decision, the Court must draw every reasonable inference from the record in the light most favorable to the non-moving party.  *Haefling v. United Parcel Serv., Inc.*, 169 F.3d 494, 497 (7th Cir. 1999).  The non-moving party must support its contentions with admissible evidence and may not rest upon mere allegations in the pleadings or conclusory statements in affidavits. *Celotex*, 477 U.S. at 324.  The plain language of Rule 56(c) mandates

the entry of summary judgment against a party who fails to establish the existence of an element essential to its case on which that party will bear the burden of proof at trial.

### B.  Local Rule 56.1

Local Rule 56.1 sets forth specific requirements for both the party moving for summary judgment as well as for the non-moving party, and because Jelks has not responded to the Defendant's summary judgment motion, it comes into play here.  Local Rule 56.1 directs the moving party to file a "Statement of Material Facts" as to which "the moving party contends there is no genuine issue."  N.D. Ind. L.R. 56.1(a).  The party opposing a summary judgment motion must respond to each of the purported undisputed facts with a "Statement of Genuine Issues" setting forth "all material facts as to which it is contended there exists a genuine issue necessary to be litigated."  *Id.*  The Local Rule specifically states that "the court will assume that the facts as claimed and supported by admissible evidence by the moving party are admitted to exist without controversy, except to the extent that such facts are controverted in the 'Statement of Genuine Issues' filed in opposition to the motion."  N.D. Ind. L.R. 56.1(b); *see also Thiele v. Norfolk & Western Ry. Co.*, 873 F. Supp.  1240, 1243 (N.D. Ind. 1994).

In this case, given that Jelks has not filed any response to Ryder's motion or disputed any of the facts set forth in the Ryder's Statement of Facts despite being given ample opportunity to do so, Ryder's allegations in its Statement of Facts are deemed admitted unless they are unsupported by the evidence or contradict each other.  *See Smith v. Lamz,* 321 F.3d 680, 683 (7th Cir. 2003) ("[w]e have consistently held that a failure to respond by the nonmovant as required by local rules results in an admission"); *Michas v. Health Cost Controls of Ill., Inc.* 209 F.3d 687, 689 (7th Cir. 2000) (same).

4

Nevertheless, even where an opposing party completely fails to respond to a summary judgment motion, Rule 56(e) permits judgment for the moving party only "*if appropriate* - that is, if the motion demonstrates that there is no genuine issue of material fact *and* that the movant is entitled to judgment as a matter of law." *P.S. Johnson v. Gudmundsson*, 35 F.3d 1104, 1112 (7th Cir. 1994) (quoting *Tobey v. Extel/JWP, Inc.* 985, F.2d 330, 332 (7th Cir. 1993)) (emphasis supplied). Thus, even where all of the material facts are undisputed, the court still must ascertain that judgment is proper "as a matter of governing law." *Id.* (citations omitted). For this reason, we will analyze each of Jelks' claims to determine whether judgment is proper.

## C.  Coleson Was Not Acting As Ryder's Employee

Jelks first asserts that Coleson was acting as a servant (i.e. employee) of Ryder at the time of the accident. Although it undisputed that Coleson was actually an employee of Driver's Service, Inc., it is possible under Indiana Law that an employee may have two employers under a "borrowed employee" theory.

The Indiana Supreme Court has developed a seven-factor test to determine whether a person is a borrowed employee. *Hale v. Kemp*, 579 N.E.2d 63 (Ind. 1991); *Fioretti v. Aztar Ind. Gaming Co., LLC*, 790 N.E.2d 587 (Ind. Ct. App. 2003). The seven factors include: (1) the right to discharge; (2) the mode of payment; (3) supplying tools or equipment; (4) the belief of the parties in the existence of an employer-employee relationship; (5) control over the means used in the results reached; (6) the length of employment; (7) establishment of work boundaries. *Hale*, 579 N.E. 2d at 67. The most important consideration is "the right to exercise control over the manner and means by which the work is be accomplished." *Fioretti*, 790 N.E.2d at 589.

5

In this case, all of the *Hale* factors point away from an employer/employee relationship. It is undisputed that Ryder did not have the right to fire Coleson and did not pay Coleson any wages. Further, it is undisputed that Ryder never instructed or advised Coleson how to perform the work that he did for General Logistics. Coleson was a Drivers Services employee for 30 years and did not consider himself a Ryder employee. Indeed, the only connection between Coleson and Ryder is that Coleson was driving a tractor trailer that General Logistics leased from Ryder. There simply is no evidence of an employer/employee relationship that would subject Ryder to any liability resulting from the Jelks/Coleson collision.

## D.  Coleson Was Not Acting As Ryder's Agent

Jelks also asserts that Ryder is liable for Coleson's alleged negligence because Coleson was acting as Ryder's agent. Ordinarily, the question of whether or not an agency relationship exists is a question of fact. *Douglas v. Monroe*, 743 N.E.2d 1181, 1187 (Ind. App. 2001). However, where, as here, the evidence is undisputed, summary judgment can be appropriate. *Id*. In this case, the undisputed evidence demonstrates that there was no agency relationship between Ryder and Coleson.

A principal is liable to third parties for the action of his agent in two situations: 1) where there is an actual agency relationship and 2) where there is an implied/apparent agency relationship. *Smith v. Brown*, 778 N.E.2d 490, 495 (Ind. App. 2002); *Douglas v. Monroe*, 743 N.E.2d 1181 (Ind. App. 2001). An actual agency relationship exists where there is "(1) a manifestation of consent by the principal to the agent; (2) an acceptance of the authority by the agent; and (3) control exerted by the principal over the agent." *Douglas*, 743 N.E.2d at 1186. An agency relationship may also be implied from the words and actions of the parties. *Heffner v.*

6

*White*, 45 N.E.2d 342, 346 (Ind. App. 1942).  However, in this case, the principal must undertake some action which causes a third person to reasonably believe that the agent is acting with the principal's authority.  *Douglas*, 743 N.E. 2d at 1187 ("It is essential that there be some form of communication, direct or indirect, by the principal, which instills a reasonable belief in the mind of the third party.").  Indeed, "statements or manifestations made by the agent are not sufficient to create an apparent agency relationship."  *Smith*, 778 N.E.2d at 495.

In this case, Ryder and Coleson agree that Coleson did not act on Ryder's behalf nor did he have the authority to do so.  Moreover, Coleson testified in his affidavit that he never represented the he had the authority to act on Ryder's behalf to a third party.  Ryder similarly affirmed that Ryder did not represent that Coleson was its agent.  Jelks has not submitted any evidence to the contrary.  Accordingly, we find that there was no agency relationship between Coleson and Ryder that would subject Ryder to liability resulting from the Jelks/Coleson collision.

### III.  CONCLUSION

Because the undisputed evidence demonstrates that there was no employment relationship between Donald Coleson and Ryder Truck Rental, Inc. nor was there an agency relationship between the two, Ryder Truck Rental, Inc.'s Motion for Summary Judgment [Doc 24] is **GRANTED**.

**SO ORDERED.**

ENTERED: April 19, 2005

                                        s/ Philip P. Simon
                                       PHILIP P. SIMON, JUDGE
                                       UNITED STATES DISTRICT COURT